IN THE SUPREME COURT OF NORTH CAROLINA

No. 285A24

Filed 14 August 2026

STATE OF NORTH CAROLINA

v.

MICHAEL JOHN MOORE, SR.

Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided panel of the Court of Appeals, 296 N.C. App. 264 (2024), vacating a judgment entered on 10 August 2022 by Judge Gale M. Adams in Superior Court, Cumberland County. Heard in the Supreme Court on 14 April 2026.

*Jeff Jackson, Attorney General, by Caden William Hayes, Assistant Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Brandon Mayes, Assistant Appellate Defender, for defendant-appellee.*

DIETZ, Justice.

Defendant Michael John Moore Sr. murdered his wife by taping her mouth shut and suffocating her with plastic bags. When law enforcement responded to missing person reports, they found the victim tied to a bed and bound with multiple restraints. The victim's hands, knees, and feet were all bound with handcuffs, zip ties, or cables. Other cables and zip ties bound the victim to the bed, attached her hands to her knees, and pulled her hands toward her feet.

A jury convicted Moore of both first-degree murder and first-degree

kidnapping. On appeal, a divided panel of the Court of Appeals vacated the kidnapping conviction, reasoning that the restraints were an inherent part of the murder by suffocation. *State v. Moore*, 296 N.C. App. 264, 270 (2024). The dissent disagreed, asserting that there were "additional restraints" that went beyond those inherent in the murder. *Id.* at 271 (Thompson, J., dissenting).

As explained below, we agree with the dissent. The State presented evidence of additional bindings beyond any restraint inherent in a murder by suffocation, including cables and zip ties that confined the victim to the bed and contorted her body by pulling her hands to her knees and feet. We therefore reverse the decision of the Court of Appeals.

**Facts and Procedural History**

Defendant Michael John Moore Sr. met the victim in 2016. The two married in 2017.

In 2018, both the victim's mother and her employer contacted law enforcement to report her missing. When officers arrived at the home shared by Moore and the victim, no one appeared to be home and there was unretrieved mail that was a week old. After a K-9 acted "irregular" during an exterior sniff of the home, an officer climbed through a window. Inside, the officer noted a "very cold" temperature and a mixed smell of chemical agents and human decomposition. More officers then entered the home and discovered the victim's body in a bedroom at the rear of the home.

The victim's nude body was tied to a bed. She had plastic bags around her head,

secured by zip ties and electrical cords. Underneath the bags, the victim had duct tape wrapped around her head and mouth in multiple directions. In addition to these bindings around the head, there was an extension cord wrapped around the victim's neck that went underneath the bed's headboard, binding the victim to the bed.

The victim's hands and feet were also zip-tied, and her hands were bound in handcuffs. A brown extension cord wrapped around the handcuffs and pulled the victim's hands toward her feet. The victim also had zip ties around her wrists that bound her arms to the back of her knees. Finally, a separate electric cable bound the victim's feet to the bedframe.

Inscribed above the victim's body on the headboard was the phrase, "Here lies the ultimate of all strumpets." There was a single chair from the dining room in the bedroom. Near the chair was a cup filled with used cigarettes, a pack of cigarettes, more zip ties, and an empty roll of tape.

Medical examiners determined that the victim died of "asphyxia with plastic bag, tape, and ligature on head and neck." Law enforcement officers ultimately located Moore in Las Vegas, where he had pawned some of the victim's jewelry. The State charged Moore with first-degree murder, first-degree kidnapping, and common law robbery.

At the close of evidence, Moore moved to dismiss the kidnapping charge on the ground that there was insufficient evidence of any restraint beyond "what was inherent in the commission of the murder." The State responded that there was

evidence of additional restraints beyond what was necessary to bind the victim and commit a murder by suffocation. The trial court denied Moore's motion.

The jury convicted Moore on all charges, and the trial court sentenced him to life in prison without parole for murder, 60 to 84 months in prison for kidnapping, and 12 to 24 months for robbery.

Moore appealed and challenged his convictions on multiple grounds. Relevant to this appeal, Moore argued that the trial court erred by denying his motion to dismiss the kidnapping charge. The Court of Appeals reversed the trial court's kidnapping judgment in a divided opinion, with the majority holding that there was insufficient evidence of any restraint beyond what was inherent in the murder, and the dissent asserting that there was sufficient evidence. *Moore*, 296 N.C. App. at 269–70; *id.* at 270–71 (Thompson, J., dissenting).

The State timely filed a notice of appeal based on the dissent.[1]

**Analysis**

**I.     Scope of review based on dissent**

We begin by discussing the scope of our review. The State filed a notice of appeal based on the dissent but did not petition for discretionary review of any additional issues. Thus, "our review is limited to grounds specifically set out in the dissenting opinion as the basis for that dissent." *Mitchell v. Univ. of N.C. Bd. of*

---

[1] Moore filed his initial notice of appeal to the Court of Appeals before the repeal of the statutory provision creating a right to appeal based on the dissent. *See Durham Green Flea Mkt. v. City of Durham*, 388 N.C. 543, 548 (2025).

*Governors*, 388 N.C. 341, 349 (2025) (cleaned up).

The dissent in this case is quite concise and addressed only a single ground: that, under the governing line of cases, the State presented substantial evidence of a restraint of the victim's body independent of any restraint inherent in the murder. *Moore*, 296 N.C. App. at 270–71 (Thompson, J., dissenting).

Most of the State's brief in this case addresses a different issue: Whether this Court should overrule the governing line of cases because those decisions are either contrary to the kidnapping statute, internally inconsistent, or just generally "unworkable." After Moore asserted in his appellee's brief that these arguments went beyond the grounds set out in the dissent, the State responded by citing a footnote from this Court's decision in *Piazza v. Kirkbride*, 372 N.C. 137, 166–67 n.13 (2019). In *Piazza*, we held that an invited error issue not mentioned in either the Court of Appeals majority or dissent was "inherently intertwined" with the grounds in the dissent and the additional issues for which the Court had allowed discretionary review. *Id.* Thus, we reasoned, the invited error issue could be reviewed by the Court without issuing a supplemental writ of certiorari. *Id.* The State contends that the issues in this case are all similarly intertwined.

We do not agree that this case is analogous to *Piazza*. The State's challenges to our precedent in this case are not inherently intertwined with the grounds set out in the dissent. To the contrary, they are mutually exclusive. The dissent focuses solely on whether there was substantial evidence of a restraint independent of that

necessary for the murder. If we agreed with the State and overruled our precedent requiring evidence of independent restraint, there would be no need to engage in the dissent's analysis at all. These are two entirely discrete issues; they are not inherently intertwined under *Piazza*. Accordingly, although we acknowledge that the precedent identified by the State has caused confusion, we limit our review in this appeal to the specific ground set out in the dissent below. *See Mitchell*, 388 N.C. at 349. We take no position on whether, in an appropriate case, that precedent should be modified or overruled as the State suggests.

## II. Restraint inherent in a murder by suffocation

We now turn to the ground set out by the dissent. We begin with an overview of the relevant kidnapping doctrine. Among other things, section 14-39 of the General Statutes makes it unlawful to "restrain" someone for any of the purposes set out in the statute. N.C.G.S. § 14-39(a) (2025).

In this case, no one suggests that the State failed to present substantial evidence that the victim was restrained. Instead, the issue is whether that restraint was an inherent part of the victim's murder. This Court has held that certain felonies "cannot be committed without some restraint of the victim" and that a kidnapping conviction cannot be based on a restraint that is "an inherent, inevitable feature" of that other felony. *State v. Fulcher*, 294 N.C. 503, 523 (1978).

There are a number of cases examining and applying this rule from *Fulcher*. The most relevant to our analysis, and the one relied on by the Court of Appeals

majority, is *State v. Prevette*, 317 N.C. 148 (1986). In *Prevette*, the victim suffocated "from having a gag tied across her mouth." *Id.* at 151. When law enforcement found the victim's body, her "hands were bound behind her back" with drapery, "her ankles were tied together by nylon stockings," "her knees were bound by a bathrobe belt," and "her mouth was bound and gagged through the use of an apron." *Id.* A jury convicted the defendant of both murder and kidnapping. *Id.* at 149.

We vacated the kidnapping conviction because "the restraint essential to the kidnapping conviction was an inherent and inevitable feature of this particular murder." *Id.* at 157. We first explained that "the placement of the gag over [the victim's] mouth could not have been the proximate cause of her death without the binding of her hands and feet which prevented the removal of the gag." *Id.* Thus, we explained, "the victim's death would not have occurred without these other ligatures." *Id.* We emphasized that the State presented no evidence of any restraints or bindings beyond those "preventing [the victim] from removing a mouth gag." *Id.* at 158.

The Court of Appeals majority held that this case is indistinguishable from *Prevette*. The majority explained that, because the victim's "hands, feet, and arms were restrained, she could not remove the bags that caused her suffocation." *Moore*, 296 N.C. App. at 269. Thus, those restraints "were inherent in the murder by suffocation." *Id.* This, in turn, meant "that the State failed to produce substantial evidence that Defendant restrained the victim independently and apart from the murder." *Id.*

The dissent disagreed, pointing to "additional restraints exerted against the victim" that went beyond those described in *Prevette*. *Id*. at 271 (Thompson, J., dissenting). Specifically, the dissent pointed to "a brown electrical cord wrapped around her neck and the bed's headboard" and "zip ties binding her wrists to her knees." *Id*. The dissent asserted that these "additional restraints of the victim" were sufficient to overcome the motion to dismiss. *Id*.

We agree that this case is distinguishable from *Prevette* for the reasons discussed by the dissent. As in *Prevette*, the victim's hands, knees, and feet were bound in a manner that prevented her from removing the plastic bags and duct tape that caused her to suffocate. Under *Prevette*, these restraints are an "inherent" part of the murder by suffocation. 317 N.C. at 157. But there were many other restraints in this case that went beyond those described as necessary in *Prevette*, including cables and zip ties that confined the victim to the bed and others that contorted her body and pulled her hands toward her knees and feet. These additional bindings go beyond any restraint that was either necessary to suffocate the victim or otherwise inherent in the murder. These additional bindings are therefore substantial evidence of the restraint element of the kidnapping offense. *See State v. Stroud*, 345 N.C. 106, 111–12 (1996). Accordingly, the trial court's ruling on the motion to dismiss should have been affirmed.

## Conclusion

We reverse the decision of the Court of Appeals.

REVERSED.

Chief Justice NEWBY concurring in the result only.

I fully agree with the way in which the majority applied *Fulcher*, but because I think we should reassess the correctness of that decision, I concur in the result only.

At the Court of Appeals, both the majority and the dissent, as well as the parties, wrestled with the proper application of *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978). In *Fulcher*, this Court determined that a restraint may not be punished as a kidnapping unless it is a separate, complete act, independent and apart from another felony. It was proper for the Court of Appeals and the parties to consider this case under *Fulcher* because neither the Court of Appeals nor the trial court could reconsider *Fulcher*. Only this Court can, and I believe we should do so here.

*Fulcher*'s "separate and apart" requirement is not found in the text of N.C.G.S. § 14-39—the statute that criminalizes kidnapping. This Court mistakenly believed, however, that if we were to interpret the statute otherwise, it would create the risk of the State frequently violating the constitutional prohibition against double jeopardy. To avoid this perceived problem, it employed the canon of constitutional avoidance—even though the statute's plain language was clear and unambiguous. In short, *Fulcher*'s separate and apart requirement was not compelled by the statute's text, was derived from the unwarranted use of a canon of statutory interpretation, and was constitutionally unnecessary. Further, the requirement has created disputes in the trial courts and the Court of Appeals as to its proper application.

Here, in his motion to dismiss the first-degree kidnapping charge, defendant argues that because the restraint of the victim that constituted the kidnapping was not separate and apart from the restraint that led to the victim's death, he cannot be convicted of both first-degree kidnapping and first-degree murder. Put more plainly, defendant argues that the plastic bags, duct tape, and ligatures around the victim's head and neck resulted in asphyxia—which ultimately killed her—only because he had also bound her hands, legs, and feet, which prevented her from removing the obstructions to her airway. If defendant had not restrained her so, she would have lived. *Cf. State v. Prevette*, 317 N.C. 148, 157, 345 S.E.2d 159, 165 (1986) ("[T]he placement of the gag over Ms. Jones' mouth could not have been the proximate cause of her death without the binding of her hands and feet which prevented the removal of the gag. . . . [T]he victim's death would not have occurred without these other ligatures."). Because the restraint was necessary to commit the murder, defendant maintains the restraint cannot also be punished as kidnapping.

To properly understand the defendant's argument, one must understand the genesis of the separate and apart requirement upon which it relies. The requirement stems from this Court's interpretation of N.C.G.S. § 14-39(a) in *Fulcher*.

In that case, the defendant forced two women to lie upon a bed at knifepoint, bound their hands behind their backs with duct tape, and compelled each of them to perform fellatio on him. *Id.* at 507, 243 S.E.2d at 342. He was subsequently charged with and convicted of two counts of kidnapping and two counts of crimes against

nature. *Id.* at 505, 243 S.E.2d at 341. He received sentences for each conviction. *Id.* The defendant argued, however, that the kidnapping charges should have been dismissed as unconstitutional because his bindings of the victims "were merely acts incidental to the commission of the crimes against nature." *Id.* at 517, 243 S.E.2d at 348.

This Court turned to the language of the kidnapping statute, N.C.G.S. § 14-39(a), which was materially identical to the modern statute. *Id.* at 517–18, 243 S.E.2d at 348 (quoting N.C.G.S. § 14-39(a) (1975)). This Court made several observations about the statute. First, "the statute plainly stat[ed] that confinement, restraint *or* removal of the victim for any of the . . . specified purposes [was] sufficient to constitute the offense of kidnapping." *Id.* at 522, 243 S.E.2d at 351. Second, "it was clearly the intent of the [l]egislature to make resort to a tape measure or a stop watch unnecessary in determining whether the crime of kidnapping has been committed"; in other words, it was no longer necessary to physically move a victim a "substantial distance" or detain them "for some appreciable period of time." *Id.* Third, we explained the plain meaning of "restrain": "[O]ne who is physically seized and held, or whose hands or feet are bound, or who, by the threatened use of a deadly weapon, is restricted in his freedom of motion, is restrained within the meaning of this statute." *Id.* at 523, 243 S.E.2d at 351.

The Court then came to the heart of the defendant's argument: whether his restraints of the victims could be punished as kidnappings when those restraints

were used to effectuate the crimes against nature. We recognized that

> two or more criminal offenses may grow out of the same course of action, as where one offense is committed with the intent thereafter to commit the other and is actually followed by the commission of the other (e.g., a breaking and entering, with intent to commit larceny, which is followed by the actual commission of such larceny).

*Id.* at 523–24, 243 S.E.2d at 351–52. We stated that "[i]n such a case, the perpetrator may be convicted of and punished for both crimes." *Id.* at 524, 243 S.E.2d at 352; *see also id.* at 525, 243 S.E.2d at 352–53.

But we also observed as "self-evident" that "certain felonies (e.g., forcible rape and armed robbery) cannot be committed without some restraint of the victim." *Id.* at 523, 243 S.E.2d at 351. We reasoned it "would violate the constitutional prohibition against double jeopardy" if a "restraint, which is an inherent, inevitable feature of [another] felony, [is] also kidnapping so as to permit the conviction and punishment of the defendant for both crimes." *Id.*

Putting these pieces together, we remarked, "Thus, there is no constitutional barrier to the conviction of a defendant for kidnapping, by restraining his victim, and also of another felony to facilitate which such restraint was committed, provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent and apart from the other felony." *Id.* at 524, 243 S.E.2d at 352. In light of the foregoing observations, this Court reasoned that the General Assembly did not intend for the kidnapping statute to run afoul of the constitutional prohibition of double jeopardy and therefore "construe[d] the word 'restrain,' as used in [N.C.]G.S. [§] 14-39, to

connote a restraint separate and apart from that which is inherent in the commission of the other felony." *Id.* at 523, 243 S.E.2d at 351. In other words, this Court applied the canon of constitutional avoidance and interpreted the statute in a way that would avoid perceived, potential constitutional problems. *See id.*; *id.* at 526–27, 243 S.E.2d at 353. *See generally State v. T.D.R.*, 347 N.C. 489, 498, 495 S.E.2d 700, 705 (1998) ("Where one of two reasonable constructions of a statute will raise a serious constitutional question, it is well settled that our courts should adopt the construction that avoids the constitutional question.").

Ultimately, this Court held the defendant's double jeopardy rights were not violated. *Fulcher*, 294 N.C. at 525, 243 S.E.2d at 352. Because the defendant had bound the victims before forcing them to perform oral sex, "the crime of kidnapping was complete, irrespective of whether the then contemplated crime against nature ever occurred." *Id.* at 524, 243 S.E.2d at 352. "[T]hough closely related . . . in time," the restraints were "not an inherent incident of" the crimes against nature; the restraints were done to prevent either woman from escaping or assisting the other. *Id.*

Both the State and defendant admit that *Fulcher* and its progeny have engendered confusion within the courts below as seen by the Court of Appeals decision in this case, *see State v. Moore*, 296 N.C. App. 264, 907 S.E.2d 779 (2024), as well as in prior cases.

Both the State and defendant briefed to this Court the ongoing validity of

*Fulcher* and discussed at oral argument its validity. The State therefore asks this Court to abandon the rule, specifically arguing that *Fulcher*'s separate and apart requirement was not required by the statute's plain language or double jeopardy principles. Understandably, defendant opposes this position. The State, however, is correct.

For starters, *Fulcher* went about statutory interpretation the wrong way. Statutory interpretation's "cardinal goal is to accomplish the intent of the legislature." *State v. Rogers*, 388 N.C. 453, 465, 920 S.E.2d 775, 785 (2025). The best indicator of legislative intent is the statute's plain language. *See N.C. Farm Bureau Mut. Ins. Co. v. Hebert*, 385 N.C. 705, 711, 898 S.E.2d 718, 724 (2024). "[W]hen the language of a statute is clear and unambiguous there is no room for judicial construction[,] and the court must give the statute its plain and definite meaning without superimposing provisions or limitations not contained within the statute." *State v. Williams*, 291 N.C. 442, 446, 230 S.E.2d 515, 517 (1976).

Importantly, "[t]his Court may turn to other sources to determine legislative intent"—including canons of construction like the canon of constitutional avoidance— "only if the statute is ambiguous or susceptible to multiple interpretations." *Hebert*, 385 N.C. at 711, 898 S.E.2d at 724. Indeed, the canon of "constitutional avoidance . . . is only employed when there are two or more reasonable meanings to the statutory language at issue." *JVC Enters., LLC v. City of Concord*, 376 N.C. 782, 788, 855 S.E.2d 158, 162 (2021). In this way, "[w]e are not at liberty to give to a statute a construction

at variance with [legislative] intent, even though such construction appears to us to make the statute more desirable and to free it from constitutional difficulties"—a maxim that this Court recited in *Fulcher* yet ignored in practice. 294 N.C. at 520, 243 S.E.2d at 350. In other words, if the plain language of a statute is clear and unambiguous, this Court must interpret the statute in accord with that plain language—even if the statute's plain language runs afoul of the constitution. In that regrettable instance, this Court's obligation is to strike down the statute as unconstitutional, not rewrite the statute in a way to avoid the constitutional conflict. That power and responsibility rests with the General Assembly, not the courts.

The Court in *Fulcher*, however, did not apply this traditional methodology. When this Court walked through N.C.G.S. § 14-39, we did not identify any ambiguity in the statute, nor did we think that "restrain" had multiple reasonable meanings in this context. To the contrary, we provided the plain interpretation of restrain: to restrict one's freedom of motion by physically seizing and holding, binding hands and feet, or threatening the use of a deadly weapon. *Id.* at 523, 243 S.E.2d at 351.

Given the clear, unambiguous language of the statute, this Court's statutory interpretation should have concluded. Nevertheless, we proceeded needlessly to apply the canon of constitutional avoidance anyway. This frolic led the Court to superimpose a limitation that does not appear in the statute's text: that the restraint be "a restraint separate and apart from that which is inherent in the commission of the other felony." *Id.* This was error.

What is more, the engrafting of a separate and apart requirement was based on a faulty constitutional premise—namely, this Court's misapprehension of double jeopardy principles. As explained above, the Court in *Fulcher* reasoned that a restraint could not be punished as kidnapping if it were an "inherent, inevitable feature" of another felony. *See id.* The Court, however, cited no authority for this proposition, which is inconsonant with double jeopardy principles.[1]

This Court has explained that both the Federal Constitution and state constitution include double jeopardy protections to "protect[ ] against (1) a second prosecution for the *same offense* after acquittal, (2) a second prosecution for the *same offense* after conviction, and (3) multiple punishments for the *same offense*."[2] *State v. Gardner*, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986) (emphases added). The focus of double jeopardy inquiries is therefore on the offense, not the underlying factual predicate. The "offense" is the "violation of the law; [the] crime." *Offense, Black's Law Dictionary* (12th ed. 2024).

---

[1] As an aside, it is not clear that murder is a type of felony of which restraint is an *inherent* and *inevitable* feature. The Court provided only two examples of crimes where restraint is an inherent, inevitable feature of the crime: forcible rape and armed robbery. *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351. Indeed, one is hard pressed to envision an instance of forcible rape or armed robbery where the perpetrator has not restricted the victim's freedom of movement by physically seizing them or threatening the use of a deadly weapon. But restraint is not an inherent, inevitable feature of every murder. Indeed, one can think of many ways one might kill another human being without restricting freedom of movement beforehand.

[2] The first two scenarios were not implicated in *Fulcher*, and they are not implicated in this case. Both *Fulcher* and this case concern only the third scenario: multiple punishments for the same offense.

This Court has further cited the *Blockburger* Test as the standard of determining whether a defendant is being punished multiple times for the same offense:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Gardner*, 315 N.C. at 454, 340 S.E.2d at 708–09 (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932)). Thus, "[w]hen each statutory offense has an element different from the other, the *Blockburger* test raises no presumption that the two statutes involve the same offense." *Id.* at 455, 340 S.E.2d at 709. Moreover, "[w]hether . . . multiple punishments may be imposed when a defendant, in a single trial, is convicted of multiple offenses when some are fully, factually embraced within others is to be determined on the basis of legislative intent." *Id.* at 460, 340 S.E.2d at 712.

In other words, a double jeopardy violation does not hinge—as the Court in *Fulcher* assumed—on whether the factual predicate satisfying one element of one crime is an "inherent, inevitable feature" of another crime. *See Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351. Indeed, multiple "criminal offenses may grow out of the same course of action." *Id.* Rather, a double jeopardy inquiry looks at the criminalized offenses to ensure that Crime A requires proof of at least one element that Crime B does not and that Crime B requires proof of at least one element that Crime A does

not. If this is so, a defendant is not being punished multiple times for the same offense.

The Court in *Fulcher* did not employ this approach. Rather than focusing on the elements of the charged offenses, this Court relied on a nebulous, difficult-to-parse test of whether a restraint was an "inherent, inevitable" feature of another felony. Therefore, the Court's "double jeopardy" concerns in *Fulcher*, which swayed our interpretation of the kidnapping statute, were not well founded.

This Court recognized as much in *State v. Beatty*, 347 N.C. 555, 495 S.E.2d 367 (1998). There "[t]he State contend[ed] that *Fulcher* was based upon a now-outmoded understanding of the Double Jeopardy Clause," and "[i]t argue[d] that under modern double jeopardy analysis, this Court's interpretation of N.C.G.S. § 14-39 in *Fulcher* is unnecessary and should be overruled." *Id.* at 558, 495 S.E.2d at 369. Having summarized the State's argument, this Court did not refute it. Instead, we pivoted to a different defense of *Fulcher*, stating, "This Court did not decide *Fulcher solely* on constitutional grounds, however. Rather, it interpreted the kidnapping statute under the 'cardinal principle of statutory construction . . . that the intent of the [l]egislature is controlling.' " *Id.* (first alteration in original) (quoting *Fulcher*, 294 N.C. at 520, 243 S.E.2d at 350). This Court defended continued adherence to *Fulcher*, but notably, it did not offer double jeopardy concerns as a justification:

> The interpretation of a criminal statute by the highest court of the state that enacted it is generally regarded as an integral part of the statute. This Court's long-standing interpretation in *Fulcher* of legislative intent in the

-19-

> enactment of N.C.G.S. § 14-39 has become an integral part of the kidnapping statute, and it thus remains the appropriate focus for analysis of ... kidnapping convictions.

*Id.* at 558–59, 495 S.E.2d at 369 (citation omitted). By moving on to a different defense of *Fulcher* instead of rebutting the State's argument, this Court tacitly conceded the point: the double jeopardy justifications for *Fulcher*'s interpretation of N.C.G.S. § 14-39 were incorrect.[3]

In summary, this Court in *Fulcher* applied the canon of constitutional avoidance—despite the fact that the statute's plain language was clear and unambiguous—to avoid faux double jeopardy issues that were premised upon a misunderstanding of the constitutional prohibition of double jeopardy. Therefore, *Fulcher* should be overruled to the extent it required a restraint to be "separate and apart from that which is inherent in the commission of [another] felony." *See Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351. Instead, "restrain" in N.C.G.S. § 14-39 should be reinterpreted consistently with the plain language, which is the true indicator of

---

[3] *Beatty*'s justification for continued application of *Fulcher*'s interpretation of N.C.G.S. § 14-39 was, and still is, unconvincing. First, it is impossible to separate *Fulcher*'s conception of the General Assembly's intent from its misconception about double jeopardy. Indeed, the Court in *Fulcher* opined that an interpretation of the statute that "would violate the constitutional prohibition against double jeopardy" "was not intended by the [l]egislature." 294 N.C. at 523, 243 S.E.2d at 351. Second, the law is not settled until it is settled right. "That's how we've always done it" is a poor justification for continued adherence to an interpretation that is contrary to the text. *See State v. Ballance*, 229 N.C. 764, 767, 51 S.E.2d 731, 733 (1949) ("There is no virtue in sinning against light or in persisting in palpable error, for nothing is settled until it is settled right." (quoting *Sidney Spitzer & Co. v. Comm'rs of Franklin Cnty.*, 188 N.C. 30, 32, 123 S.E. 636, 638 (1924)).

legislative intent, to simply mean "a restriction [upon freedom of movement] by force, threat or fraud, without a confinement." *See id.*

So construed, defendant's kidnapping conviction and sentence were proper. When considering a motion to dismiss, the question is whether the State presented substantial evidence of each element of the offense charged and that defendant was the perpetrator. *State v. Stroud*, 345 N.C. 106, 111, 478 S.E.2d 476, 479 (1996). "Substantial evidence is 'that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *State v. Porter*, 303 N.C. 680, 685, 281 S.E.2d 377, 381 (1981)). The evidence must be viewed "in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom." *Id.*

As noted above, there was substantial evidence in this case to support the elements of both first-degree murder and first-degree kidnapping and to support that defendant was the perpetrator. Moreover, applying the *Blockburger* Test, defendant's convictions and sentences do not violate the constitutional prohibition of double jeopardy. Defendant was convicted of first-degree murder on the basis of premeditation and deliberation, the felony murder rule, and murder by torture. He was also convicted of first-degree kidnapping.

In general terms, a "murder" is an intentional unlawful killing of another human being with malice aforethought. *State v. Vance*, 328 N.C. 613, 621, 403 S.E.2d 495, 501 (1991). Our General Statutes "classif[y] murders as either first or second

degree, but *only* for the purposes of assigning punishment." *Id.* at 621–22, 403 S.E.2d at 501. First-degree murder is statutorily defined in N.C.G.S. § 14-17(a), which, in relevant part, provides, "A murder which shall be perpetrated by . . . torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any . . . robbery [or] kidnapping . . . shall be deemed to be murder in the first degree . . . ." N.C.G.S. § 14-17(a) (2025). As the statute lays out, the crime is first-degree murder, and the State can obtain a conviction by use of one or several theories. *State v. Wilson*, 385 N.C. 538, 545, 895 S.E.2d 355, 362 (2023). As noted above, three theories are relevant here: premeditation and deliberation, felony murder, and murder by torture.

To obtain a conviction for first-degree murder under a premeditation and deliberation theory, the State must prove beyond a reasonable doubt that the defendant (1) specifically intended, (2) to unlawfully kill, (3) another human being, (4) after premeditation (i.e., after thinking for some length of time, however short, before the actual killing), and (5) deliberation (i.e., after developing the requisite intent in a cool state of mind and not as the result of violent passion due to sufficient provocation). *See State v. Rodriguez*, 371 N.C. 295, 314–15, 814 S.E.2d 11, 25 (2018); *State v. Jones*, 303 N.C. 500, 505, 279 S.E.2d 835, 838–39 (1981). "[P]roof of premeditation and deliberation is also proof of intent to kill." *Jones*, 303 N.C. at 505, 279 S.E.2d at 839.

Contrastingly, "[f]irst-degree murder based upon the felony murder rule has

only two elements: (1) the defendant knowingly committed or attempted to commit one of the felonies indicated in N.C.G.S. § 14-17, and (2) a related killing." *State v. Thomas*, 325 N.C. 583, 603, 386 S.E.2d 555, 567 (1989) (Mitchell, J., dissenting) (citing *State v. Reese*, 319 N.C. 110, 145, 353 S.E.2d 352, 372 (1987), *overruled on other grounds by*, *State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44 (1997)). Under the felony murder theory, "[w]hether there was insufficient evidence to show that [the] defendant either committed the killing himself, intended that the killing take place, or even knew that the killing would take place is irrelevant." *Reese*, 319 N.C. at 145, 353 S.E.2d at 372.

Finally, if the State proceeds under a first-degree murder by torture theory, it must prove beyond a reasonable doubt (1) "that the defendant intentionally tortured the victim and [(2)] that such torture was a proximate cause of the victim's death." *Stroud*, 345 N.C. at 112, 478 S.E.2d at 479.

> "Torture is defined as the course of conduct by one or more persons which intentionally inflicts grievous pain and suffering upon another for the purpose of punishment, persuasion, or sadistic pleasure," and "[c]ourse of conduct has been defined as the pattern of the same or similar acts, repeated over a period of time, however short, which established that there existed in the mind of the defendant a plan, scheme, system or design to inflict cruel suffering upon another."

*State v. Richardson*, 385 N.C. 101, 145, 891 S.E.2d 132, 171 (2023) (alteration in original) (quoting *State v. Lee*, 348 N.C. 474, 489, 501 S.E.2d 334, 343–44 (1998)).

Kidnapping is defined in N.C.G.S. § 14-39(a):

> Any person who shall unlawfully confine, *restrain*, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, *restraint* or removal is for the purpose of:
>
> . . . .
>
> > (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
> >
> > (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person . . . .

N.C.G.S. § 14-39(a) (2025) (emphases added). Subsection (b) explains when a kidnapping is in the first degree: "If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree . . . ." *Id.* § 14-39(b). Thus, first-degree kidnapping by restraint requires the State to prove beyond a reasonable doubt: (1) that defendant imposed a restraint; (2) that he did so without legal right; (3) that he did so without the consent of the person restrained (or of the parent or custodian if the person restrained is under the age of sixteen); (4) that he did so for one of the purposes enumerated in N.C.G.S. § 14-39(a); and (5) that the restrained person was (i) seriously injured, (ii) sexually assaulted, or (iii) not released in a safe place.

When the State criminalized kidnapping, it sought to punish the unlawful, nonconsensual confinement, restraint, or removal of another human being for illicit

purposes. Substantial evidence in this case shows that defendant restricted the victim's freedom of movement without legal right and without her consent to commit another felony, do serious bodily harm, and/or terrorize her, and that the victim was seriously injured and not released in a safe place. The jury having concluded that the State proved each element beyond a reasonable doubt, defendant may be punished for the crime of first-degree kidnapping.

When the State criminalized murder, it sought to punish the intentional unlawful killing of another human being with malice aforethought. Substantial evidence in this case shows that defendant intentionally and unlawfully killed the victim with malice aforethought. Defendant planned to murder the victim. Having gathered the instruments necessary to block the victim's airways, restrain her limbs, and fasten her to the bed, defendant then carried out his heinous crime, culminating in the victim's unimaginably horrific death. Defendant also intentionally inflicted grievous pain and suffering upon the victim in order to punish her for being, in defendant's mind, "the ultimate of all strumpets." Defendant's torture of the victim led directly to her death. What is more, defendant killed the victim while perpetrating a kidnapping and robbery.[4] The jury having concluded that the State proved three

---

[4] Felony murder carries some unique double jeopardy considerations that ultimately are not implicated in this case. Namely, our cases have held that "in this State a defendant may not be punished for both felony murder and for the underlying, 'predicate' felony, even in a single prosecution." *Gardner*, 315 N.C. at 460, 340 S.E.2d at 712. Had the jury found defendant guilty of first-degree murder solely on a felony murder theory, and had kidnapping been the only underlying felony found by the jury, then the underlying kidnapping would have merged into the murder conviction, and the kidnapping judgment would have been

theories of first-degree murder beyond a reasonable doubt, defendant may therefore be punished for the crime of first-degree murder.

Moreover, there are elements to be proved for each of these crimes that are not required for the other. For instance, for first-degree kidnapping, the State had to prove defendant restrained the victim, which is not an essential element of first-degree murder under any of the theories the jury employed to convict defendant. Similarly, for first-degree murder, the State had to prove defendant unlawfully killed the victim, which is not an essential element of first-degree kidnapping.

Although it is unusual that the restraint that constituted the kidnapping was also used to perpetrate the murder, it is ultimately of no moment. A single action may violate two laws. Punishing both offenses does not violate the constitutional prohibition of double jeopardy. The State may punish defendant's unlawful restraint of the victim, and it may punish his unlawful killing of the victim.

The majority properly reverses the decision of the Court of Appeals and reinstates defendant's kidnapping sentence pursuant to *Fulcher*. But applying *Fulcher* has not been easy, thereby creating confusion in the trial courts and at the Court of Appeals in the application of North Carolina's criminal statutes. As a court

---

arrested. *See State v. Barlowe*, 337 N.C. 371, 380, 446 S.E.2d 352, 358 (1994). But neither of those conditions are present in this case. The jury found defendant guilty of first-degree murder under two other theories, and it found another underlying felony to support the felony murder conviction—i.e., common law robbery. As such, the rules mentioned above are not triggered. Notably, the rules mentioned above would not have resulted in the kidnapping charge's dismissal in any event.

of last resort, and critically the court that created the present issue in the first place, it is our responsibility to remedy the problem by overruling *Fulcher*. Because the majority does not, however, I respectfully concur in the result only.

Justice BARRINGER joins this concurring in the result only opinion.